

**SO ORDERED,**

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: July 14, 2020**

The Order of the Court is set forth below. The docket reflects the date entered.

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:  CARLOS A. DILLON SR.                          CASE NO. 16-01682-KMS

    DEBTOR                                                       CHAPTER 13

## OPINION AND ORDER SUSTAINING OBJECTION TO CLAIM

This matter came on for hearing on the Objection to Amended Proof of Claim, ECF No. 47, by debtor Carlos A. Dillon Sr., with Response in Opposition, ECF No. 51, by his ex-wife, Yvonne Dillon. This proceeding is core under 28 U.S.C. § 157(b)(2)(B).

Carlos objects mainly on two grounds, first that Yvonne's claim ("Claim") was untimely filed; and second that the Claim is based on a property settlement, not a domestic support obligation as Yvonne contends. The Objection is sustained. Although the Claim is based on a domestic support obligation, it was filed three years late and must therefore be disallowed.

## FINDINGS OF FACT

These findings are based on Yvonne's proof of claim, other documents of record in this case, the exhibits admitted into evidence at the hearing, and testimony by Yvonne and by Richard Grindstaff, Carlos's attorney. Carlos did not attend the hearing.

In December 2006, Carlos and Yvonne were married. In October 2015, the Chancery Court of Pike County, Mississippi, granted Yvonne a divorce on the ground of habitual cruel and inhumane treatment. The Decree for Divorce and Related Issues was entered after a trial at which Carlos did not appear. Neither had he filed any pleadings in the case. Yvonne was awarded custody of their child, and Carlos was ordered to pay child support of $504 per month.

The Decree granted Yvonne thirty days to retrieve her belongings from the marital home, the use and possession of which was awarded to Carlos along with the responsibility for paying the mortgage, taxes, insurance, and other expenses of home maintenance. Yvonne was to retain her ownership of a 2007 Honda Accord, and Carlos was to retain his ownership of a 2012 Nissan Frontier. Yvonne was a codebtor on the mortgage and the Nissan, and the chancellor ordered Carlos to keep those payments current for as long as both parties owned the home and the Nissan, finding that Yvonne's credit had been harmed by Carlos's late payments.

Most significant for the dispute here, the chancellor ordered Carlos to either pay Yvonne $9000 of the equity in the home within ninety days of the Decree or refinance the home and pay her half the equity in an amount no less than $9000. Carlos was also ordered to pay court costs and attorney's fees totaling $1207.

At the hearing on the Objection, Yvonne testified about the purpose of the $9000 award: "It was my understanding that . . . the money was for me to get reestablished where, you know, a place to live . . . and things of that sort for myself and my daughter." Hr'g Tr. 22:3-5. At the time of their divorce, Carlos earned "a lot more" than Yvonne--$13 to $14 an hour more. *Id.* 22:13-17.

Carlos did none of what the Decree ordered.

On May 20, 2016, Carlos filed this chapter 13 case. His schedules, signed under penalty of perjury, conflicted with facts in the Decree: On Schedule H, he denied having any codebtors, and

2

on Schedule E/F, he listed "ongoing child support" as Yvonne's only claim. Yvonne received no notice of the bankruptcy, because Carlos listed her on his creditor mailing list at an address where she had not lived for more than fifteen years.

On June 6, 2016, the chancery court, unaware of the bankruptcy, heard Yvonne's Petition to Cite for Contempt, and on August 9, 2016, entered its Judgment of Contempt and Other Relief ("Contempt Judgment" or "Judgment"). Carlos did not appear, and no attorney appeared on his behalf. The chancellor noted that Carlos had not appeared for any previous hearings. She found Carlos in contempt for not allowing Yvonne to remove her personal property from the family home; failing to keep current on child support payments; failing to keep current on the mortgage, thereby hurting Yvonne's credit; failing to keep current on the Nissan note, thereby causing the Nissan to be repossessed and hurting Yvonne's credit; failing to pay Yvonne's attorney's fees; and failing to pay her either half the equity in the home or no less than $9000.

Under the Judgment, Carlos would have fifteen days to purge himself of contempt by clearing his child support arrearage through the Department of Human Services and making all future payments when due; paying Yvonne $9000 in home equity; and allowing her access to the home to remove her personal property at 10:00 a.m. on August 13, 2016. Yvonne would be accompanied by a sheriff's deputy, who would stay there with her until she got her belongings. If Carlos was not present or otherwise refused Yvonne access to the property, the deputy was authorized to use whatever force was necessary and reasonable to gain entry into the home.

The chancellor ordered Carlos to secure Yvonne's release from liability on the mortgage and the Nissan and to present to the court within sixty days that he had done so. The chancellor also ordered Carlos to pay an additional $2250 in Yvonne's attorney's fees for the Petition to Cite

3

for Contempt, bringing the total amount under the contempt judgment to $12,962.08 (including the $505.08 child support arrearage).

Months passed and so did the October 2016 deadline for filing proofs of claim in Carlos's bankruptcy case. Yvonne still did not know about the bankruptcy.

On December 19, 2016, an order was entered confirming Carlos's plan, which included the mortgage arrearage and ongoing mortgage payment. But as to Yvonne, the plan provided only for child support through payroll deduction. As to the Nissan and the approximately $9000 still owed, the treatment was to "abandon and pay zero."[1] ECF No. 25 at 5.

In January 2017, Yvonne finally learned of Carlos's bankruptcy. A former neighbor on the road where Yvonne had lived so many years earlier had picked up mail from the house and given it to Yvonne's sister, who worked nearby and gave it to Yvonne. The mail included a letter referencing the bankruptcy. On January 17, 2017, Yvonne emailed Grindstaff, Carlos's attorney, informing him that when Carlos filed bankruptcy, he was in contempt of court and "it is [not] fair that your office has not looked at his divorce papers." Debtor's Ex. 1, ECF No. 61 at 1.

But Grindstaff had looked at the divorce papers. Five months earlier, on August 3-4, 2016, Yvonne's divorce attorney, who knew then about the bankruptcy, called Grindstaff and emailed him the Decree and the transcript of the contempt hearing. Because Grindstaff knew Yvonne was represented by counsel, he did not attempt to contact Yvonne and did not respond to her January 2017 email. On August 4, 2016, Yvonne still had approximately two-and-a-half months during which she could have filed a timely proof of claim.

---

[1] According to his bankruptcy schedules, Carlos owned only one vehicle when he filed this case: the Nissan. *See* Sch. A/B, ECF No. 4 at 4. Carlos has not filed a motion to incur debt to buy a car during the pendency of this case, raising the question of how he has traveled to and from his job over the past four years.

4

On January 2, 2020, Yvonne, now represented by different counsel, filed a late proof of claim for $12,962.08 based on a "Domestic Obligation." Carlos objected that the claim should be disallowed as untimely and that it was not a priority claim. Before the objection could be heard, Yvonne filed a motion under Rule 3002(c) for extension of time to file a proof of claim, which was granted without a hearing. After entry of the order, Yvonne refiled her proof of claim and Carlos again objected.

## CONCLUSIONS OF LAW

Carlos asserts four arguments for disallowance: that the Claim is not a domestic support obligation with priority status but is instead a nonpriority property settlement; that the Claim is based on a contempt order entered after a hearing held in violation of the automatic stay; that the $505.08 child support arrearage has been paid; and that the proof of claim was untimely filed. ECF No. 47.

### I. The Claim Is a Domestic Support Obligation.

Defined as to this dispute, a domestic support obligation ("DSO") is a debt (1) owed to or recoverable by a former spouse; (2) in the nature of alimony, maintenance or support, regardless of whether the debt is expressly designated as such; (3) established by the applicable provisions of a divorce decree or other court order before, on, or after the date the bankruptcy case was filed; and (4) not assigned to a nongovernmental entity. 11 U.S.C. § 101(14A).

"Whether a particular obligation constitutes alimony, maintenance, or support . . . is a matter of federal bankruptcy law, not state law." *Biggs v. Biggs (In re Biggs)*, 907 F.2d 503, 504 (5th Cir. 1990). Regardless of how the obligation was labeled in the divorce court, the bankruptcy court "must place substance over form to determine the true nature and purpose of the award." *Joseph v. J. Huey O'Toole, P.C. (In re Joseph)*, 16 F.3d 86, 88 (5th Cir. 1994). "In reviewing the

5

nature of a particular obligation, a bankruptcy court must consider the factors relevant to characterizing the debt and determine the intent of the court in imposing the obligation*."* *In re Biggs*, 907 F.2d at 506 n.2 (citation omitted). "[T]he Chancellor's reasoning and intent carry evidentiary weight." *Rustin v. Rustin (In re Rustin)*, No. 09-05100-NPO, 2011 WL 5443067, at *8 (Bankr. S.D. Miss. Nov. 9, 2011).

Here, the wording of the Decree and other evidence establish that the chancellor intended the $9000 award as support for Yvonne. Although benchmarking the award against the equity in the home, the Decree ordered Carlos to pay Yvonne "no less than" $9000, ECF No. 61 at 3, implying that the award was not a property settlement. Yvonne's testimony that the award was to help her get established supports that conclusion. So also does her testimony that Carlos earned much more than she did. *See Benich v. Benich (In re Benich)*, 811 F.2d 943, 945 (5th Cir. 1987) (parties' disparate earning power as relevant factor). The granting of the divorce on the ground of cruel and inhumane treatment shows that Carlos caused the breakup. *See id.* (fault for breakup as relevant factor). Accordingly, the $9000 award is in the nature of support. And because the award of $1207 in attorney's fees and costs also "reflects a balancing of the parties' financial needs," the total amount of the DSO under the Decree, excluding child support, is $10,207. *See In re Joseph*, 16 F.3d at 88.

## II. The Claim Does Not Include the Attorney's Fees Under the Contempt Judgment or the Child Support Arrearage.

The filing of a bankruptcy petition operates as a stay of "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case" and of "any act to obtain possession of property of the estate or of property from the estate." 11 U.S.C. § 362(a)(2), (3). The automatic stay does not apply to criminal contempt proceedings. 11 U.S.C. § 362(b)(1); *In re Xenon Anesthesia of Tex., PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex.

2014); *In re Wiley, M.D.*, 315 B.R. 682, 687 (Bankr. E.D. La. 2004). But the stay does apply to civil contempt proceedings. 315 B.R. at 687.

Whether a contempt proceeding is criminal or civil depends on its primary purpose. *Placid Refining Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 612 (5th Cir. 1997). The primary purpose of a criminal contempt proceeding is to either punish a party for bad conduct or vindicate the authority of the court; the primary purpose of a civil contempt proceeding is to either coerce compliance with a previous order or compensate the wronged party for the contemnor's violation. *Id.* "Orders which permit the debtor to avoid punishment by complying with the court's directive are considered to be civil contempt orders." *In re Wiley, M.D.*, 315 B.R. at 688.

Here, the contempt proceeding was civil. Its purpose was to coerce Carlos's compliance with the Decree; and Carlos was permitted to purge himself of contempt, that is, to avoid the punishment of incarceration, by complying with the directives in the Contempt Judgment. The additional attorney's fees assessed against Carlos were a civil contempt sanction, payable to Yvonne's attorney "for presenting this matter before the Court," Cl. 2-2 at 6. *See Petroleos Mexicanos v. Crawford Enters.*, 826 F.2d 392, 398-99 (5th Cir. 1987) ("compensatory fine" for costs and expenses incurred in bringing and prosecuting contempt hearings was civil contempt sanction). Because the contempt hearing was held after Carlos filed this bankruptcy case, both the hearing and the Judgment violated the automatic stay.

In the Fifth Circuit, an action taken in violation of the automatic stay is not void, but voidable, meaning it "may be either voided or cured." *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir. 1989). A voidable action "is invalid and of no effect unless and until the action is made valid by subsequent judicial action annulling the automatic stay." *Jackson v. Priority Trs.*

7

*Servs. of Miss., L.L.C.*, 392 B.R. 666, 671 (Bankr. S.D. Miss. 2008) (quoting *Singleton v. Abusaad (In re Abusaad)*, 309 B.R. 895, 899 (Bankr. N.D. Tex. 2004)).

Here, the stay has not been annulled, so Carlos is correct that the Contempt Judgment is invalid. But the invalidity of the Judgment does not invalidate the entire Claim, only the amount awarded under the Judgment: the $2250 in additional attorney's fees. Carlos is also correct that the $505.08 child support arrearage has been paid. Accordingly, the amount of the Claim is the $10,207 for support, attorney's fees, and costs awarded under the Decree.

### III. The Untimely Claim Is Disallowed.

On objection, an untimely claim generally must be disallowed. *See* 11 U.S.C. § 502(b)(9). The Federal Rules of Bankruptcy Procedure ("Rules") provide that the deadline may be extended, but only under the conditions specified in Rule 3002(c). Fed. R. Bankr. P. 9006(b)(3). Only one of the conditions for extension might apply here: A creditor's motion to extend time, whether filed before or after the claims bar date, may be granted if "notice was insufficient under the circumstances to give the creditor a reasonable time to file a proof of claim because the debtor failed to timely file the list of creditors' names and addresses required by Rule 1007(a)." Fed. R. Bankr. P. 3002(c)(6)(A). This exception to disallowance has been available only since December 1, 2017, when the subsection became effective with other Rules amendments.

Courts disagree on when Rule 3002(c)(6)(A) applies. *See* W. Homer Drake et al., *Chapter 13 Practice & Procedure* § 18:2 (June 2020 update) (observing that language of subsection (c)(6)(A) is "subject to interpretive difficulty"). Some courts read the exception literally to mean it is available only when the debtor fails to timely file any creditors list at all. *See, e.g., Brenner's Restoration, Inc. v. Somerville (In re Somerville)*, 605 B.R. 700, 707-8 (Bankr. D. Md. 2019) ("This Court agrees with those courts that have taken a plain meaning approach to Bankruptcy

8

Rule 3002(c)(6) and held that a creditor's insufficient notice must be caused by an untimely filing of the Creditor List . . . ."); *In re Fryman*, No. 18-20660, 2019 WL 2612763, at *3 (Bankr. E.D. Ky. July 24, 2019) ("The omission of an unscheduled creditor from the Mailing List does not constitute a failure to timely file the list of creditors for the purposes of Rule 3002(c)(6)(A)."). Other courts read the exception more broadly, holding that the triggering event is the debtor's failure to timely file a complete and accurate list. *See, e.g., In re Vanderpol*, 606 B.R. 425, 429 (Bankr. D. Colo. 2019) ("Reading the rule narrowly would render it all but superfluous."); *In re Mazik*, 592 B.R. 812, 818 (Bankr. E.D. Pa. 2018). (holding that R. 3002(c)(6)(A) is satisfied "if the debtor files a list of creditors that omits the name and address of the creditor seeking relief under the rule").

This Court need not enter the fray. On the facts here, Rule 3002(c)(6)(A) does not apply regardless of how it is interpreted, because Yvonne had a reasonable time in which to file the Claim after she received notice of the case. Although Yvonne credibly testified that she did not know Carlos had filed bankruptcy until three months after the claims bar date, her then-attorney knew more than two months before the bar date, and his knowledge is imputed to Yvonne. *See In re Linzer*, 264 B.R. 243, 248 (Bankr. E.D.N.Y. 2001) ("Th[e] general rule for imputing an agent's notice or knowledge applies in bankruptcy cases."). The Claim must therefore be disallowed. *See In re Bendezu*, No. 16-10055 (JKS), 2016 WL 3462040, at *2 (Bankr. D.N.J. June 17, 2016) (45 days before claims bar date was enough time to file claim); *In re Markey*, No. 12-10852, 2013 WL 64754 at *6 (Bankr. M.D.N.C. Jan. 4, 2013) (21 days before claims bar date was enough time to file claim).

Yvonne is not without recourse, however. The Claim in the amount of $10,207 is nondischargeable as a DSO. *See* 11 U.S.C. §§ 523(a)(5), 1328(a)(2), 1328(c)(2). So disallowance

means only that the debt will not be paid through the bankruptcy case. *In re Bendezu*, 2016 WL 3462040, at *2 ("The failure to file a timely proof of claim only precludes a creditor from participating in distributions from the chapter 13 estate and does not affect a debtor's ability to enforce a nondischargeable debt . . . ."). Carlos is projected to complete his chapter 13 plan in one more year, after which Yvonne may enforce the debt. Alternatively, if the case is dismissed, she may enforce the debt after the dismissal.

## ORDER

The Objection to Claim is therefore **ORDERED SUSTAINED**.

*##END##*